## LEWIS *vs.* HARRIS.

[ACTION BY PURCHASER FOR BREACH OF COVENANTS CONTAINED IN DEED.]

1. *Breach of covenant at law.*—A purchaser of land, with full covenants of warranty, is entitled to recover, at law, for money paid by him to remove a paramount equitable title existing at the time of the conveyance.
2. *When outstanding equitable title constitutes breach of covenant.*—A purchaser for valuable consideration, without notice of an outstanding equitable title, cannot, on purchasing such equitable title, recover the amount paid from his vendor; whether he could recover, if he had notice of the equitable title at the time of his purchase, but his vendor was an innocent purchaser without notice, *quære ?*
3. *Judicial notice of public lands.*—It is a historical fact, of which the courts of this State are bound to take judicial notice, that all the lands in Franklin county are held under the government of the United States.
4. *Variance.*—Under a complaint alleging the purchase by plaintiff of an outstanding equitable title in several persons, for which he seeks to recover damages from his vendor, a recovery cannot be had on proof of the purchase of such title from one of the persons named.
5. *Admission of fact and law.*—The existence of an outstanding equitable title to land in a third person may be proved by a party's parol admission.

APPEAL from the Circuit Court of Madison. Tried before the Hon. WM. S. MUDD.

THIS action was brought by Benjamin Harris, against John H. Lewis, to recover damages for the breach of covenants contained in a conveyance from said Lewis and wife to Harris, for a tract of land in Franklin county, known as the "Russell's Valley iron-works tract." The conveyance was executed on the 26th August, 1851, and contained the following covenant: "The said Lewis and wife, for themselves, their heirs, executors and administrators, do hereby, and in consideration of the premises, warrant, and will forever defend, the title to the above described and hereby granted premises, unto the said Benjamin Harris, his heirs and assigns, from and against themselves, and all and every person or persons claiming or holding under them, the said John H. Lewis and wife, Mary M. Lewis, and also against the lawful title, claim or demand of all and every person or persons claiming or holding by, from or under the government of the United States." The breaches assigned in the complaint, as amended, were—1st, that defendant has not warranted and defended the premises to plaintiff, but, on the contrary, "plaintiff avers that Peter Lorillard, Thomas A. Ronalds, John Addison Thomas, and John David Wolfe, trustees and executors of the last will and testament of Maria D. L. Ronalds, deceased, lawfully claiming the said premises by an elder and better title, afterwards, to-wit, on the 1st May, 1853, lawfully entered into the said premises, and ousted plaintiff therefrom, and still lawfully hold him out of the same;" 2d, "that at the execution of said deed, the complete legal and equitable title to the said premises was not vested in said defendant, nor in said defendant and his wife, and they did not have power to sell and convey the same to said plaintiff, free from the lawful title, claim or demand of all and every person or persons whomsoever, claiming under them, or under the government of the United States; but, on the contrary, the complete and perfect equitable title to an undivided two-thirds of said premises was vested in Peter

Lorillard, Thomas A. Ronalds, John Addison Thomas and John David Wolfe, trustees and executors of the last will and testament of Maria D. L. Ronalds, deceased, who, after the execution of said deed by said defendant and wife, demanded their said two-thirds interest from said plaintiff, and threatened to file a bill in chancery to recover the same from plaintiff, and only desisted from filing such bill on the payment to them by plaintiff of the sum of $2,000, the value of their said two-thirds interest; and plaintiff avers, that he paid sum of $2,000 to said trustees and executors, to purchase in and remove their said outstanding and paramount equitable title and incumbrance, and to prevent an eviction from the said premises; of all which said defendant had notice."

On the trial, as appears from the bill of exceptions, after reading in evidence his deed from the defendant and wife, "the plaintiff proved that, since the execution of said deed, and before the commencement of this suit, he had paid to one Thomas A. Ronalds the sum of $2,000, for an equitable interest which said Ronalds set up and claimed to have and own in and to an undivided two-thirds of the lands mentioned in said deed; that he paid said sum to avoid the institution of a suit in chancery which said Ronalds had ordered to be instituted, and which was about being instituted by him against plaintiff for a recovery of his alleged interest in said lands; and that the interest which said Ronalds thus set up and claimed, at the time said sum was paid by plaintiff, and at the time of the execution of said deed by defendant and wife to plaintiff, was of the value of $2,000.   Plaintiff then offered to prove, by the letters and parol declarations and admissions of defendant, that said Ronalds, before and at the time of the sale of said lands by defendant to plaintiff, and the execution of said deed, had an outstanding equitable title in and to an undivided two-thirds of said lands. To the introduction of such parol declarations the defendant objected; the court overruled the objection, and the defendant excepted.

" There was evidence tending to show, that plaintiff, at the time he purchased said lands from defendant, and re-

ceived a deed to the same from defendant and wife, knew of the alleged equitable title of said Ronalds to said lands. The defendant then proved, and it was admitted by plaintiff, that defendant had the legal title to said lands at the time of the sale and execution of said deed by defendant and wife to plaintiff.

" The court charged the jury, among other things, that if they believed from the evidence that, at the time defendant sold and conveyed to plaintiff the lands mentioned in said deed, there was an outstanding equitable title to an undivided two-thirds of said lands existing in the said Thomas A. Ronalds; and that plaintiff and defendant knew of the existence of said equitable title in said Ronalds, at the time plaintiff purchased said lands, and received said deed from defendant and wife; and that plaintiff, after the purchase of said lands from defendant, and the execution of said deed to plaintiff by defendant and wife, purchased and paid for said equitable title, in order to avoid a suit in chancery which Ronalds had ordered to be instituted against him, and which was then about being instituted against him by Ronalds for the recovery of said equitable interest in said lands,—then they should find a verdict for the plaintiff.

" The defendant excepted to this charge, and asked the court to instruct the jury, that if they believed from the evidence that, at the time defendant sold and conveyed said lands to plaintiff, he had the legal title to the same, they could not inquire into the question of the equitable title, but must find for the defendant; which charge the court refused to give, and the defendant excepted."

The admission of the evidence objected to, the charge given, and the refusal to charge as requested, are now assigned as error.

D. C. HUMPHREYS, and GOLDTHWAITE & SEMPLE, for the appellant.—1. The verbal admission of Lewis, that the equitable title to a portion of the land was in Ronalds, was not competent evidence of that fact, because it was an admission of a matter of law.—Polk's Lessee v. Robertson, 1 Term Rep. 463; Boston Hat Manufacturing Co.

v. Messenger, 2 Pick. 223–40; Leforce v. Robinson, Litt. Sel. Cas. 22; Jackson v. Miller, 6 Cowen, 756; Jackson v. Shearman, 6 Johns. 20. If an admission, by a party having the legal title to land, that an equitable title existed in another, be competent evidence, it would necessarily be conclusive, since it would be impossible, in most cases, to disprove the existence of such equitable title.

2. This evidence was, moreover, irrelevant to the issues. The breaches assigned in the complaint averred an outstanding equitable title in Ronalds and several others, while the evidence tended to show such title in Ronalds alone. The variance rendered the evidence inadmissible, even if it was otherwise competent.

3. The charge of the court was wrong. An outstanding equitable title in Ronalds, at the time of the sale and conveyance by defendant to plaintiff, was not a breach of the covenants contained in the deed; the legal title being in the grantor. The existence of an outstanding legal title, at the execution of a deed with warranty of title, is a breach of the covenants, because, as between two legal titles, the prior must prevail. But a court of law cannot investigate or give effect to an equitable title, at least until there has been a judicial ascertainment of that equity.—Robinson v. Campbell, 3 Wheaton, 212; Lake v. Hastings, 24 Miss. 490. A prior equitable title does not always prevail over the legal title: it should have been shown that Ronalds had such an equitable title as was entitled to postpone the legal title. The covenants of the deed resulted from the use of the statutory words "grant, bargain and sell," and the express warranty of title against the grantors and all claiming under the United States. The implied covenants extend only to acts done or suffered by the grantor or his heirs.—Roebuck v. Dupuy, 2 Ala. 535; Griffin v. Reynolds, 17 Ala. 198. It was not shown that the equitable title of Ronalds was derived from or under the grantor or his heirs, or that it was derived from any one who held under the United States; and yet the charge made it amount to a breach of the covenant, notwithstanding this deficiency of the proof. In addition to these objections to the charge, it was

undoubtedly erroneous in allowing a recovery on proof
which was variant from the case made by the complaint.

ROBINSON & JONES, contra.—1. The deed contained the
statutory covenants, and an express covenant of warranty
of title against all persons holding or claiming under the
grantors, and against any other "lawful title, claim or
demand" under the United States. The implied cove-
nants are, "that the grantor was seized of an indefeasi-
ble estate is fee-simple, freed from incumbrances done or
suffered by the grantor; and also for quiet enjoyment
against the grantor, his heirs and assigns."—Clay's Digest,
156, § 31; Roebuck v. Dupuy, 2 Ala. 535; Andrews &
Bro. v. McCoy, 8 Ala. 928. Since there can be no lawful
title, claim, or demand to lands in Franklin county, not
derived from the United States, the express warranty ·
extends to any lawful title, claim or demand whatever,
which is equivalent to a covenant for quiet enjoyment.
Caldwell v. Kirkpatrick, 6 Ala. 60; Andrews & Bro. v.
McCoy, 8 Ala. 928. The effect of the defendant's cove-
nants, then, is, that he was seized of an indefeasible estate in
fee-simple, freed from incumbrances done or suffered from
him or those claiming under him, which should be quietly
enjoyed by plaintiff, as against not only the grantor him-
self and those claiming under him, but against the whole
world.

2. It is settled in this State, that a purchaser, with
warranty of title, may buy in an outstanding paramount
title or incumbrance, and recover its value from his .ven-
dor, without an actual eviction.—Dupuy v. Roebuck,
7 Ala. 484; Davenport v. Bartlett & Waring, 9 Ala. 180;
Anderson v. Knox, 20 Ala. 156. No case has been found,
which recognizes a distinction, in this respect, between
legal and equitable incumbrances; but, on the contrary,
there are many cases in which courts of law have thus
recognized equitable titles.—See Elliott v. Edwards,
3 Bos. & P. 181; Maberly v. Robins, 5 Taunton, 625;
Dart on Vendors and Purchasers, 456; Jones v. Robinson,
10 Johns. 269; Sprague v. Baker, 17 Mass. 585; Prescott
v. Trueman, 4 Mass. 628; 1 Bouvier's Law Dictionary,

491. The reason of the rule extends to equitable, as well as legal incumbrances; and there is no principle of law which warrants the distinction attempted to be drawn. The action at law is not based on the equity, nor is the court asked to enforce the equitable right: the suit is for the breach of covenant, and the equity is only incidentally and collaterally involved. There are many analogous cases, in which courts of equity, while refusing to enforce legal rights, entertain jurisdiction of equitable matters involving purely legal questions; and courts of law, on the other hand, recognize purely equitable rights incidentally involved in legal questions. Moreover, if plaintiff cannot enforce his rights in this action, he is without redress. Hatch v. Cobb, 4 Johns. Ch. 559; Kempshall v. Stone, 5 Johns. Ch. 193; Cullum v. Branch Bank, 4 Ala. 29; Thompson v. Christian, 28 Ala. 406.

3. As both parties knew of the existence of this equitable title, at the time of the plaintiff's purchase, it could not have been defeated on the plea of a *bona-fide* purchase for valuable consideration without notice.

4. The question of variance was not raised in the court below. The evidence was suffered to go to the jury without objection, and no charge was asked on the effect of the alleged variance. The objection is not reached by a general exception to the charge, but the error, if any, is waived.—Blount v. McNeill, 29 Ala. 473; Merritt v. Seaman, 6 Barbour, 335; Underhill v. Pomeroy, 2 Hill's (N. Y.) R. 603. The charge given asserts a correct legal proposition, and no qualification to it was asked.—Miller v. Jones, 29 Ala. 180; Lockwood v. Nelson, 16 Ala. 294; Waters v. Spencer, 22 Ala. 466; Kirkland v. Oates, 25 Ala. 468; Hutchinson v. Dearing, 20 Ala. 804; Ewing v. Sanford, 19 Ala. 613; Ivey's Adm'r v. Owens and Wife, 28 Ala. 648. To allow this objection now to be raised to the charge, would, in effect, make the judge responsible for the admission of evidence to which the parties raised no objection, and allow a party to take advantage of an error at which he connived.

5. There was no error in admitting proof of the defendant's parol admissions as to the existence of the equitable

title in Ronalds. The admission was as to a mixed question of law and fact, and, consequently, competent evidence for the jury.—1 Greenl. Ev. § 97, and cases cited. If the suit had been in chancery, the evidence certainly would have been competent; and the rules of evidence are the same at law as in equity.—Dwight v. Pomeroy, 17 Mass. 303; 2 Story's Equity, § 1527. The objection of variance cannot now be raised to this evidence, under the general objection made in the court below.—Phillips v. Kelly, 29 Ala. 632; Cunningham v. Cochran & Estill, 18 Ala. 480; Donnell v. Jones, 13 Ala. 490; 1 Zabr. 566; 3 How. U. S. R. 515; 6 Barbour, 335; 2 Hill, 603.

WALKER, J.—The charge of the court below authorized a recovery, in an action for a breach of warranty, of damages for money paid to remove a paramount equitable title existing at the time of the conveyance. The appellant contends, that a vendor, who has the legal title, cannot be made liable at law for a breach of warranty, growing out of the necessary purchase by the vendee of an outstanding adverse equitable title. That the existence of such an equitable title, and the compulsory purchase of it, amount to a breach of covenant of quiet enjoyment, is not denied; but the point made is, that a court of law cannot take cognizance of the equitable outstanding title.

While we concede that an equitable title cannot be enforced in a court of law, we think that it may be the ground from which the legal right springs, and that, in the enforcement of the legal right, it may become necessary and competent for the court of law to recognize the equitable title. The contrary of this doctrine was held, in 1800, by Lord Kenyon, who said, "Sitting in a court of law, we cannot take notice of an equitable title."—Alpass v. Watkins, 8 Term R. 516. In that case, a recovery back of a part of the purchase-money, paid by the plaintiff on a contract for the purchase of land, was refused, upon the ground that, for the purpose of a trial at law, the vendors had a good legal title. The same question came up two or three years later; and Lord Alvanley decided, that a plaintiff, who had paid a deposit on the purchase of a

leasehold estate, might recover it back in an action for money had and received, upon the ground that the title was not good in equity.—Elliott v. Edwards, 3 B. & P. 181.

The same question again occurred in 1814, in the Engglish court of common pleas; and Gibbs, Chief-Justice, having before him the decisions in Alpass v. Watkins, and Elliott v. Edwards, decided that the deposit made by a purchaser might be recovered back at law, because the title was defective in equity. He uses the following language: "Here is a contract to make out a good title. If that contract be a contract to make a good title both in law and equity, we must collaterally look to see whether the title be good in equity, as well as in law. It is true we sit here only as a court of law, to administer the legal rights which arise out of the contract; but one of those rights is, to have a title good in equity. See to what a length the defendant's doctrine would proceed! If a deed appeared on the abstract, whereby lands were conveyed to A. and his heirs, to the use of B. and his heirs, in trust for C. and his heirs, it would prove that a good title at law was made out in B. and his heirs, to convey without the concurrence of C." This decision, it is said in 1 Sugden on Vendors, 243, "appeared to have set the point at rest." In the later case of Bayman v. Gutch, 7 Bing. 379, the question does not seem to have been, whether a court of law could take cognizance of the fact that a title was bad in equity; yet the court, without controverting the cases above cited, make some remarks which do not harmonize with the law as laid down in them. The question in Willet v. Clark, 10 Price, 207, was altogether different; and that case is not at war with the proposition which we have laid down. The question in that case was, whether the purchaser could defend against a suit for the purchase-money, because the title of the vendor was derived by a purchase at a bankrupt sale by the assignee, and was, therefore, liable to be avoided in equity. The principle laid down in the decisions of Lord Alvanley and C. J. Gibbs, is asserted in Addison on Contracts, 177, and the authority of those decisions is there recognized.

45

This principle is also supported by decisions on analogous questions. Thus, it is held, that a promise in consideration of the release of an equity of redemption, after condition broken, will sustain an action at law, and that the court of law " will take notice that the mortgagor has an equity to be released in chancery."—Thorpe v. Thorpe, 1 Lord Raymond, 662. An agreement to forbear proceedings to enforce a well founded claim in equity, may be recovered upon at law.—Dowdenay v. Oland, Cro. Eliz. 768; 1 Parsons on Contracts, 365; Robinson's Adm'rs v. Tipton's Adm'r, at the present term. An action at law may be maintained upon a promise in consideration of the waiver of an equitable right.—1 Parsons on Contracts, 369; Whitbeck v. Whitbeck, 9 Cow. 266. A purchaser of land by parol, who has gone into and retains possession,. (his vendor not having failed or refused to comply with the contract,) cannot resist a recovery on his note for the purchase-money, upon the ground of a want of consideration.—Gillespie v. Battle, 15 Ala. 276.

The breach of the covenant gives a right at law to recover damages; and if that breach has grown out of the existence of an equitable title, it is, in our judgment, competent for a court of law to take notice of the equitable title, so far as it constitutes an element of the breach of warranty. It results that the charge is not erroneous, because the outstanding title bought in by the covenantee was equitable.

2. It is also objected to the charge given by the court below, that it permitted a verdict for the plaintiff without regard to the question, whether the equitable title was paramount or superior to the legal title conveyed to him. The charge was, that if an equitable title existed at the time of the conveyance in one Ronalds, and the plaintiff and defendant knew of it; and if the plaintiff had since bought in that equitable title, for the purpose of avoiding a chancery suit to enforce it, the plaintiff was entitled to recover. An equitable title might have existed at the time of the conveyance, which was paramount to the legal title conveyed to the plaintiff, but which would nevertheless have been postponed to the title de-

rived by the conveyance. That could have been the case, where the plaintiff was a purchaser without notice. But the charge does not authorize a recovery in the case where the plaintiff has bought in an equitable title, subordinate to his legal title, because he was a purchaser without notice. On the contrary, it makes the knowledge of the plaintiff and defendant, of the outstanding equitable title, one of the requisites to a recovery. It might be that both the plaintiff and defendant, at the time of the conveyance by the latter to the former, had knowledge of what is called the equitable title; and yet it might be postponed to the legal title, because the person under whom the defendant held was an innocent purchaser, for valuable consideration, without notice of the equity. Whether the charge is obnoxious to the objection, that it would allow a recovery in such a case, we do not think it necessary for us to decide. The judgment must be reversed on another point; and it will be very easy for the court, in any future charge, to avoid the point of difficulty and doubt in the present charge.

3. It is a historical fact, that the lands in Franklin county, in this State, are all held under the government of the United States. The evidence of that fact is found in the treaties with the tribe of Indians who transferred the lands to the United States, and in the acts of congress. Even the reservations, provided for by the treaty, were held under the United States. The title to them came from the United States. So the school lands were transferred by the general government in trust to the State, and are thus held under the United States. The warranty of title in the deed "against the lawful title, claim or demand of all and every person, claiming or holding by, from or under the government of the United States," is, in effect, a covenant of warranty against the title of all persons; and it was not incumbent upon the plaintiff to show that the equitable title bought in by him was the title of one "claiming or holding by, from or under the government of the United States." That is a fact of which the court was bound to take judicial notice. The general warranty of title was equivalent to a coven-

ant for quiet enjoyment.—Caldwell v. Kirkpatrick, 6 Ala. 60; Andrews v. McCoy, 8 Ala. 929. This covenant of quiet enjoyment was broken, if the plaintiff was compelled to buy in the equitable title which was outstanding at the time the covenant was made, and paramount to the legal title, in order to avoid a suit for its enforcement. Anderson v. Knox, 20 Ala. Rep. 156; Davenport v. Bartlett & Waring, 9 Ala. Rep. 180; Dupuy v. Roebuck, 7 Ala. Rep. 484.

4. The breaches assigned allege, that the plaintiff has bought in an equitable title of Peter Lorillard, Thomas A. Ronalds, John A. Thomas, and John D. Wolfe, trustees and executors of the last will and testament of Mariah D. L. Ronalds, deceased. The proof showed an outstanding equitable title in Thomas A. Ronalds, and the charge authorized a recovery upon that proof. The charge, in this respect, is clearly erroneous. The plaintiff has no right to recover upon a cause of action totally different from that described in his complaint. It is not sufficient that the plaintiff makes out a right of action by evidence. He must prove the cause of action averred in the complaint. The omission to object to irrelevant evidence when it is offered does not preclude the right to move its exclusion, or to ask a charge at any time before the jury retire, nor authorize a charge that the plaintiff may recover upon facts variant from those alleged.

5. The evidence which was objected to was only illegal because it tended to make a case different from that alleged. The admissions were of matters of law, so mingled with matters of fact, that they could not be separated. If relevant, they were admissible.—1 Greenleaf on Evidence, § 97.

The judgment of the court below is reversed, and the cause remanded.